2004-NMCA-005

82 P.3d 954

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jeffrey FAIRBANKS, Defendant–Appellant.**

**No. 22,996.**

Court of Appeals of New Mexico.

Oct. 8, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

BUSTAMANTE, Judge.

{1} Defendant appeals from an Order of Conditional Discharge, which required him to pay a $75 crime lab fee. NMSA 1978, Section 30–31–28 (1972) (governing conditional discharges). The sole issue on appeal is whether the district court properly assessed the crime lab fee pursuant to NMSA 1978, Section 31–12–8 (1988) (crime lab fee statute). We reverse.

## FACTS AND PROCEDURAL HISTORY

{2} In July 2000 Defendant was indicted for distribution of an imitation controlled substance and possession of a controlled substance. Defendant entered into a Plea and Disposition Agreement in which he agreed to plead guilty to the possession charge and the State agreed to dismiss the distribution charge. The State also agreed to a sentence of probation. There was no other agreement as to sentence. The Plea and Disposition Agreement was filed and recorded with the district court on October 30, 2000. There is no indication in the record that the district court ever formally accepted the plea. *See* Rule 5–304(B) NMRA 2003. Rather, at the first hearing, the district court deferred sentencing without entering an adjudication of guilt and referred Defendant to a drug court program. One year later, following Defendant's successful completion of the drug court program, a second sentencing hearing was held. At that time, the district court granted Defendant a conditional discharge, credited him with eighteen months probation for his completion of the drug court program, and entered an unconditional Order of Dismissal, dismissing the criminal charges with prejudice. A month later, at the presentment hearing, defense counsel refused to sign the State's proposed Order of Conditional Discharge because it was conditioned on a $75 crime lab fee. Defendant argued that a conditional discharge is an adjudication without guilt that does not constitute a "conviction" for purposes of the crime lab fee statute. The State maintained that the guilty plea which Defendant entered was a conviction, regardless of the sentence he received. The district court agreed with the State and entered an Order of Conditional Discharge,

assessing the crime lab fee against Defendant as a "cost."

## DISCUSSION

{3} Defendant argues that the crime lab fee statute applies only to persons "convicted" of a drug offense. Although he pled guilty to possession, Defendant reads the conditional discharge statute to expressly authorize the district court to grant a conditional discharge after a guilty plea is entered and accepted by the court. Defendant urges that under the plain language of the statute, a guilty plea followed by a conditional discharge is not a conviction. Since there was no conviction, Defendant reasons that the imposition of costs was an illegal sentence, contrary to NMSA 1978, § 31–12–6 (1972).

{4} The State does not address the conditional discharge statute in its answer brief, although it concedes that the crime lab fee statute requires a conviction before the lab fee can be imposed. Instead, the State takes the position that the district court can impose costs, even without statutory authority, if the parties agree. In the State's view, Defendant agreed to pay the fee under the terms of the plea and those terms are binding. The State also points out that Defendant expressly agreed not to appeal any sentence imposed in accordance with the terms of the plea, and since the fee was an express term of the agreement, Defendant is not an aggrieved party for purposes of this appeal. However, if the fee was improper, the State argues that the appropriate remedy is to allow Defendant to withdraw the entire plea, rather than to delete a single term.

## Dismissal of Charges Under Conditional Discharge is not a Conviction for Purposes of the Crime Lab Fee Statute

{5} We first address the question of whether the district court had authority to impose the fee. Resolution of this issue requires a determination of whether a dismissal under the conditional discharge statute is a "conviction" as contemplated by the crime lab fee statute. Statutory interpretation is a question of law that we review de novo. *State v. Perez,* 2002–NMCA–040, ¶ 10, 132 N.M. 84, 44 P.3d 530; *State v. Herbstman,*

1999–NMCA–014, ¶ 16, 126 N.M. 683, 974 P.2d 177.

{6} The fundamental tenet of statutory construction is to give effect to legislative intent. *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994); *State v. Saiz*, 2001–NMCA–035, ¶ 2, 130 N.M. 333, 24 P.3d 365. The primary indicator of legislative intent is the plain language of the statute. *Id.* We refrain from further interpretation where the language is clear and unambiguous. *State v. Anthony M.*, 1998–NMCA–065, ¶ 13, 125 N.M. 149, 958 P.2d 107. The relevant portion of the crime lab fee statute unequivocally requires Defendant to be "convicted" of a crime before the lab fee can be imposed. It provides: "A person *convicted* of a violation of the provisions of the Controlled Substances Act [30–31–1, NMSA 1978] . . . shall be assessed, in addition to any other fee or fine, a fee of seventy-five dollars ($75.00) to defray the costs of chemical and other analyses of controlled substances." Section 31–12–8(A) (emphasis added).

{7} The conditional discharge statute provides in relevant part:

A. If any person who has not previously been convicted of violating the laws of any state or any laws of the United States relating to narcotic drugs, marijuana, hallucinogenic or depressant or stimulant substances, is found guilty of a violation of Section 23 [30–31–23 NMSA 1978], after trial or *upon a plea of guilty, the court may, without entering a judgment of guilty and with the consent of the person, defer further proceedings and place him on probation* upon reasonable conditions and for a period, not to exceed one year, as the court may prescribe.

. . . .

C. If during the period of his probation the person does not violate any of the conditions of the probation, then *upon expiration of the period the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt. . . . A discharge or dismissal shall not be deemed a conviction* for purposes of disqualifications or disabilities imposed by law upon conviction of a crime including the penalties prescribed under this section for second or subsequent convictions or *for any other purpose.* Discharge and dismissal under this section may occur only once with respect to any person.

Section 30–31–28 (emphasis added).

{8} It is difficult to conceive of a legislative command more clear. Under the plain language of subsection (A), upon a guilty plea or verdict, the defendant is placed on probation and sentencing is deferred *without an adjudication of guilt.* See *Herbstman*, 1999–NMCA–014, ¶ 11, 126 N.M. 683, 974 P.2d 177 (comparing deferred sentence where adjudication of guilt is entered and conditional discharge where it is not); *Ogden*, 118 N.M. at 242, 880 P.2d at 853 (primary indicator of legislative intent is the plain language of the statute). Once the probationary period has been successfully completed, the person must be discharged and charges must be dismissed, without an adjudication of guilt, and the discharge or dismissal *may not be deemed a "conviction" for any purpose.* Consequently, once a defendant successfully completes probation and charges are dismissed under a conditional discharge, the conviction whether by verdict or plea, no longer exists. See *State v. Brothers*, 2002–NMCA–110, ¶ 10, 133 N.M. 36, 59 P.3d 1268.

{9} In addition, we note that the conditional discharge statute was in existence long before the crime lab fee statute was enacted in 1981. See 1972 N.M. Laws, ch. 84, § 28 (conditional discharge); 1981 N.M. Laws, ch. 367, § 3 (crime lab fee). Yet, the legislature expressly chose to make a "conviction" the prerequisite to imposing a crime lab fee, without exception. See NMSA 1978, § 31–12–8 (1988). Since then, the legislature has not altered the language of the conditional discharge statute to authorize a fee. See § 30–31–28 and NMSA 1978, § 31–20–13 (1994); *compare* NMSA 1978, § 31–18–17(B) (2003) (amending habitual offender statute to permit use of conditional discharge taken pursuant to Section 31–20–13 as a prior conviction). The legislature is presumed to be aware of existing statutes when it enacts

legislation. *State v. McClendon,* 2001–NMSC–023, ¶ 10, 130 N.M. 551, 28 P.3d 1092.

**■** {10} The State is correct that New Mexico courts hold that a guilty plea typically constitutes "conviction" once the court accepts and records it. *See* NMSA 1978, § 30-1–11 (1963); *see also Padilla v. State,* 90 N.M. 664, 666, 568 P.2d 190, 192 (1977) (finding defendant was "convicted" for purpose of habitual offender sentencing, even though criminal charges were dismissed under deferred sentence); *State v. Larranaga,* 77 N.M. 528, 529–30, 424 P.2d 804, 805 (1967) (holding "conviction" refers to finding of guilt by guilty plea or by verdict, and does not require imposition of sentence for purpose of habitual offender act); *State v. Mondragon,* 107 N.M. 421, 424, 759 P.2d 1003, 1006 (Ct. App.1988) (defining conviction as finding of guilt, even before formal adjudication by court or sentencing); *State v. Castillo,* 105 N.M. 623, 624, 735 P.2d 540, 541 (Ct.App. 1987) ("For all practical purposes, this defendant was 'convicted' of the prior crime at the time he entered, and the judge accepted, his plea. It is the fact of a prior conviction, not a prior sentence, that is dispositive."). However, the State is incorrect insofar as it argues that the effect of a conditional discharge is only a "sentencing argument" that is not dispositive on the issue of whether there has been a "conviction" for purposes of the crime lab fee statute. This may be true in the case of a suspended or deferred sentence, even where criminal charges are dismissed, because there has been an adjudication of guilt. *See Padilla,* 90 N.M. at 666, 568 P.2d at 192. However, a conditional discharge is different than a suspended or deferred sentence because there is no adjudication of guilt. *Herbstman,* 1999–NMCA–014, ¶ 11, 126 N.M. 683, 974 P.2d 177 (finding conditional discharge is not a conviction for purposes of sex offender registration). Consequently, even though there is a guilty plea, the successful completion of probation under the terms of a conditional discharge results in the eradication of the guilty plea or verdict and there is no conviction. *Brothers,* 2002–NMCA–110, ¶¶ 9–10, 133 N.M. 36, 59 P.3d 1268 (declining to find deferred sentence results in eradication of conviction for purposes of sex offender registration, in part, because to do so

would make deferred sentence no different than a conditional discharge). Accordingly, we hold that without a conviction, the imposition of the crime lab fee was unauthorized.

**Absent Ambiguity or Resolution of Ambiguity Below, the Plea Agreement Must be Construed According to Defendant's Reasonable Interpretation.**

**■** {11} The State urges us to uphold the district court's decision to impose the fee, even if it was not authorized by statute, since Defendant agreed to pay it under the terms of the plea agreement, and he agreed not to appeal any sentence imposed within those terms. According to the State, the plea is, therefore, binding and Defendant is not an aggrieved party because he waived his right to appeal. Defendant counters that the State never made this argument below. As such, Defendant argues that even an appellee may not raise a new argument on appeal where it is unfair to the appellant. In Defendant's view, the existence of either an agreement or a waiver is a fact-based issue that cannot be raised for the first time on appeal because he must be alerted to the issue and be given an opportunity to present evidence on the factual issue at the district court level.

**■** {12} While it is true that we do not affirm the decision of the district court where it would be unfair to one party because the argument was not made below, *see State v. Franks,* 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994) (reviewing court will not affirm on fact-dependent ground not raised below given unfairness to defendant), this issue can be resolved on the plea agreement itself. Each of the State's arguments is premised on one fact—that Defendant clearly and unambiguously agreed to pay the lab fee under the terms of the plea. The plea agreement contained the following terms:

*TERMS*

This agreement is made according to the following conditions:

*SENTENCING AGREEMENT:* State agrees to probation at initial sentencing.

State has no other agreement as to sentence.

*PENALTIES:* The maximum for this charge is:

1. POSSESSION OF A CONTROLLED SUBSTANCE (COCAINE), a fourth degree felony with a basic sentence of eighteen (18) months with a $5,000 fine, followed by one (1) year of parole.

In addition, the defendant must pay a $75 Crime Lab fee.

Any basic sentence for a felony may be altered up to one third for aggravating or mitigating circumstances.

*POTENTIAL INCARCERATION:* If the court accepts this agreement, the defendant may be ordered to serve a period of eighteen (18) months incarceration. He may be ordered to serve a period of probation. If the defendant later violates that probation, defendant may be incarcerated for the balance of the sentence.

*CHARGES TO BE DISMISSED:* Count 1 of Indictment CR 00–002689.

*UNDISCLOSED PRIOR CONVICTIONS:* The state may bring habitual offender proceedings, as provided by law, based on any convictions not admitted in this plea. The state may also choose to withdraw this plea agreement if it discovers any such convictions.

{13} The State argues the terms of the plea unambiguously mandates that "defendant must pay a $75 Crime Lab fee," whereas all other terms use the word "may." In the State's view, Defendant unconditionally agreed to pay the fee, even if payment is not authorized by statute. The State also argues that Defendant did not condition the plea on not paying the crime lab fee if he got a conditional discharge.

{14} Defendant counters that the only agreement as to sentence was that he would get probation. In Defendant's view, the mandatory fee provision is merely a recitation of the maximum penalty for the offense. He notes that the fee provision is contained under a term describing the maximum penalties for the offense, and it is situated between two sentences describing maximum penalties. The purpose of this provision, according to

Defendant, is merely to notify him of the potential consequences of the plea. Since the judge was free to sentence Defendant to any term of probation, he would have had to pay the fee if he had been convicted under a deferred or suspended sentence or subsequently incarcerated. However, since Defendant was given a conditional discharge, and he was never convicted, the term is not applicable. Defendant also argues that the term "may" as used in the other provisions, is appropriate because the district court always has sentencing discretion. Finally, Defendant represents, that given the opportunity, he would have presented evidence of his pre-agreement negotiations between himself and the district attorney concerning the terms of the agreement.

{15} "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the trial court." *State v. Orquiz,* 2003–NMCA–089, ¶ 7, 134 N.M. 157, 74 P.3d 91 (quoting *State v. Mares,* 119 N.M. 48, 51, 888 P.2d 930, 933 (1994)); *see* Rule 5–304. "Upon review, we construe the terms of the plea agreement according to what Defendant reasonably understood when he entered the plea." *Orquiz,* 2003–NMCA–089, ¶ 7, 134 N.M. 157, 74 P.3d 91. "If the trial court resolves alleged ambiguities [with the parties at the time of the plea,] and no further objection is made, the agreement is no longer ambiguous on those points addressed by the court." *Mares,* 119 N.M. at 51, 888 P.2d at 933. However, if the ambiguities are not addressed by the district court and there is no other relevant extrinsic evidence to resolve the ambiguity, the reviewing court may rely on the rules of construction, construing any ambiguity in favor of the defendant. *See id.* at 52, 888 P.2d at 934. Under these circumstances, contract interpretation is a legal issue that this Court reviews de novo. *See Hedicke v. Gunville,* 2003–NMCA–032, ¶ 24, 133 N.M. 335, 62 P.3d 1217; *Kirkpatrick v. Introspect Healthcare Corp.,* 114 N.M. 706, 711, 845 P.2d 800, 805 (1992).

{16} In this case, there is no record of any plea proceeding. The record does reflect, however, that there was no discussion of the $75 lab fee by the parties or the court at

either sentencing hearing. In fact, the first time the State ever mentioned the fee was at the presentment of the judgment and sentence, one month after the charge was unconditionally dismissed without prejudice. The record also reflects that the district court was persuaded by the construction of the crime lab fee statute, not as a construction of the terms of the plea agreement. Further, neither party requested an evidentiary hearing on the issue.

{17} Given the lack of any record that the issue was discussed, much less agreed to, and our ruling that the imposition of the fee was not authorized by statute, we find Defendant's understanding of the plea agreement is reasonable. Our finding is supported by the terms of the plea itself, plus the fact that Defendant immediately objected when the district court ordered him to pay the $75 lab fee as a condition of dismissal. We also find the State's argument is unreasonable under the facts of this case. Essentially, the State is asking this Court to read language into the plea to find that the Defendant agreed to an *illegal sentence.*

{18} Parties are free "to negotiate the terms of a plea agreement to the *full extent allowed by law.*" *Mares,* 119 N.M. at 51, 888 P.2d at 933 (emphasis added). However, the State must bear in mind that the plea might ultimately prevent the court from ordering that term. *See id.* Under the crime lab fee statute, the court is authorized to impose a fee when a defendant is convicted. The fee would be authorized if defendant entered his guilty plea and received a deferred or suspended probated sentence or if he violated the terms of his probation under the conditional discharge. § 30–31–28(B). However, since Defendant successfully completed his probation and charges were dismissed, the district court did not have authority to impose the term.

{19} The State's reliance on *State v. Handa* for the proposition that a defendant can agree to an illegal sentence and thereby waive his right to appeal is misplaced. 120 N.M. 38, 897 P.2d 225 (Ct.App.1995). In *Handa* the issue was not whether defendant can agree to an unauthorized sentence, but whether a defendant can knowingly and in-

telligently agree not to raise an issue on appeal and then renege on that representation. *Id.* at 46, 897 P.2d at 233. We held that defendant could not renege on the deal where the error was invited. *Id.* Here there is no agreement for Defendant to renege on and there is no evidence that he invited any error. Further, since the fee was not part and parcel of the plea, this Court is not required to vacate the entire plea. *Compare State v. Gibson,* 96 N.M. 742, 743, 634 P.2d 1294, 1295 (1981) (denying defendant's request to set aside unauthorized portion of plea where defendant expressly agreed to condition and stating that the remedy is to vacate entire plea).

{20} In light of the foregoing, we reverse the district court's decision and remand for entry of an Amended Order of Conditional Discharge consistent with this opinion.

{21} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.